HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SIU MAN WU,

        Plaintiff,

   v.

UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 367,

        Defendant.

CASE NO. C13-748RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion to dismiss by defendant United Food and Commercial Workers Union, Local 367 (the "Union").[1] Dkt. # 8. *Pro se* plaintiff Siu Man Wu appears to allege the following causes of action: (1) Violation of the National Labor Relations Act ("NLRA"); (2) Violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60 et seq.; and (3) racial discrimination or conspiracy to violate civil rights under 42 U.S.C. §§ 1981, 1983, & 1985. Dkt. # 3.

---

[1] Plaintiff contends that the Union is not the only defendant in this lawsuit. Dkt. # 20 (Opp'n) ¶ 3a. However, in his complaint, plaintiff conceded that the Union was the only named defendant. Dkt. # 3 ¶ 144a. Plaintiff has not named or served any other defendants in this action. Accordingly, allegations of wrongdoing by individuals or entities other than the Union have been disregarded.

ORDER- 1

As a preliminary matter, Mr. Wu cannot bring claims on behalf of someone else in his *pro se* capacity. *See Johns v. Cnty of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) (*pro se* party "has no authority to appear as an attorney for others than himself."). Mr. Wu also concedes that Wing Kai Tse and Sing Cho Ng are not parties in this lawsuit. Dkt. # 20 (Opp'n) ¶ 3b. Accordingly, the court GRANTS defendant's motion with respect to any purported claims brought on behalf of anybody other than Mr. Wu.

The court notes that this appears to be the last case in a string of related case brought by Mr. Wu, Mr. Tse, and Mr. Ng against the National Labor Relations Board ("NLRB"), their former employer, or the Union alleging similar claims for discrimination, retaliation, constructive discharge and/or violation of the NLRA with respect to uniform laundering and/or heavy lifting and arduous tasks. *See* Case No. C08-1160JCC (*Ng. v. Haggen*) (dismissed for failure to timely serve defendants); Case No. C09-965RAJ (*Wu v. Haggen*) (dismissed for failure to prosecute); Case No. C10-372JCC (*Ng. v. Haggen*) (dismissed for failure to prosecute); Case No. C10-898MJP (*Ng v. Union*) (dismissed voluntarily); Case No. C10-899TSZ (*Wu v. Union*) (dismissed voluntarily); Case No. C10-900RSL (*Tse v. Union*) (dismissed voluntarily); Case No. C11-860RSL (*Wu v. NLRB*) (dismissed for lack of jurisdiction and failure to state a claim); Case No. C12-398RAJ (*Tse v. NLRB*) (dismissed for lack of jurisdiction and failure to state a claim); Case No. C13-746RAJ (*Tse v. Union*) (dismissed for failure to state a claim; pending appeal).

Having considered the pleadings, briefing, exhibits, and the record herein, the court GRANTS defendant's motion to dismiss.[2]

---

[2] Neither party has requested oral argument, and this matter may be decided on the papers submitted.

ORDER- 2

## II. BACKGROUND

Plaintiff, an individual of Chinese national origin, worked for a grocery store owned by Haggen Inc. from April 2001[3] until October 2008. Dkt. # 3 (Compl.) ¶¶ 4-5, 30. As an employee of Haggen, plaintiff was a member of the Union. *Id.* ¶ 7. The Collective Bargaining Agreement ("CBA") required that the employer provide laundering of the required uniforms for the employees and not require employees to work overtime without compensation. *Id.* ¶ 24a & b. However, when plaintiff began work in April 2001, he was required to sign an agreement in which he agreed to launder his uniform. *Id.* ¶ 31a. Plaintiff alleges that every employee was required to sign a similar agreement, but that Haggen laundered the uniform of other workers in the meat and bakery department and head cook, but continued to refuse to launder the uniforms of the Chinese cooks. *Id.* ¶¶ 32, 35a. Plaintiff also alleges that beginning in June 2006, Haggen mandated the Chinese cooks at his store to do arduous and excessive amounts of heavy lifting, moving, transporting, and stocking of weighty items, which caused plaintiff serious injury in 2006, 2007 and 2008. *Id.* ¶¶ 36a.

Around May or June 2008, plaintiff initiated an EEOC complaint against Haggen regarding the uniform and arduous task issue. *Id.* ¶ 38a. From August 2008 to approximately November 2008, the Union appears to have taken action with respect to plaintiff's complaints. *Id.* ¶¶ 40-41a, 42d-43, 49. Plaintiff alleges that the Union's period of inaction began in November 2008 and continued through its filing of an unfair labor practice charge against Haggen in February 2009. *Id.* ¶¶ 49d, 56, 58a. Plaintiff alleges that Haggen issued unjustified disciplinary action against him on November 15, 2008, and that he quit thereafter, which he contends was constructive discharge. *Id.* ¶¶49o, 50, 53. Plaintiff alleges that he sought union representation on the uniform issue, the

---

[3] Plaintiff has indicated two different start dates, November 2002 and April 2001. The court has used the April 2001 date as plaintiff's start date.

arduous-task issue, the constructive discharge issue, and the discrimination and retaliation issue. *Id.* ¶ 56. The Union led plaintiff to believe that it would press the arduous-task discrimination and retaliation charges and a retaliation and hostile work environment-related constructive discharge against Haggen. *Id.* ¶ 58d.

The Union filed the unfair practices labor charge in February 2009. *Id.* ¶ 58a. In April 2009, the Union sent plaintiff a letter regarding the arduous-task issue. *Id.* ¶ 60a. Plaintiff alleges that the Union never sent him information about the unfair practices labor charge after the April 2009 letter. *Id.* ¶ 63a-b. In June 2009, the Union sent plaintiff another letter about another scheduled meeting with the employer together with certain merchandise, but plaintiff did not attend that meeting. *Id.* ¶ 61. In July 2009, the Union sent plaintiff a letter that it was closing plaintiff's file with the Union. *Id.* ¶62. In April 2010, plaintiff sent a letter to the Union inquiring about the status of the unfair practices labor charge, but he did not receive a response. *Id.* ¶ 64a-c. In May 2010, plaintiff sent a letter to Region 19 of the National Labor Relations Board ("NLRB"), inquiring about the status of the charge. *Id.* ¶ 65a. On May 6, 2010, Region 19 responded to plaintiff that Haggen had reached a private agreement with the Union in April or May 2009, so the Union withdrew the charge. *Id.* ¶ 66a. Plaintiff alleges that May 6, 2010, is the date he discovered that the union withdrew the labor charge. *Id.* Plaintiff filed this action on April 29, 2013. Dkt. # 1.

### III. ANALYSIS

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998). However, the complaint must indicate more than mere speculation of a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). This court holds the pleadings of *pro se* complainants to less stringent standards than those of licensed attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, every complainant must demonstrate some claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The court generally may not consider material beyond the pleadings in ruling on a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, where documents are referenced extensively in the complaint, form the basis of plaintiffs' claim, or are subject to judicial notice, the court may consider those documents in the context of a motion to dismiss.[4] *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003).

**A. NLRA claim**

"The NLRA is enforced primarily through actions of the NLRB—private actions are available only in exceptional circumstances." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1067 (9th Cir. 2004); *see N.L.R.B. v. United Food & Commercial Workers Union, Local 23, AFL-CIO*, 484 U.S. 112, 118-22 (1987) (explaining process to resolve unfair practices complaints). The Supreme Court has found implicit in the NLRA a private cause of action against unions to enforce their duty of fair representation. *Karahalios v.*

---

[4] Plaintiff has provided a number of exhibits in support of his opposition. To the extent that the documents are referenced in the complaint, form the basis of his complaint, or are subject to judicial notice, the court has considered them. Additionally, the court has reviewed all of the exhibits for the purpose of determining whether the court should grant leave to amend.

ORDER- 5

*Nat'l Fed'n of Fed. Emps.*, 489 U.S. 527, 535 (1989).  Under the NLRA, the statute of limitations for a breach of the duty of fair representation by an employee against a union is six months.  *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 172 (1983).  The six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union.  *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986).

Plaintiff appears to allege that the Union wrongfully failed to file grievances related to Haggen's discriminatory assignment of arduous tasks, which caused him serious injury in 2006, 2007, and 2008.  Dkt. # 3 ¶ 36a.  Plaintiff also appears to allege that the Union failed to file grievances for Haggen's violations of the CBA's uniform laundering requirements before November 15, 2008.  *Id.* ¶¶ 41a-b, 49e-f.  Plaintiff contends that the Union's period of inaction began in November 2008 and continued through its filing of an unfair labor practice charge against Haggen in February 2009.  *Id.* ¶¶ 49d, 56, 58a. Plaintiff also contends that the Union failed to keep him informed about the unfair practices labor charge, and failed to respond to his inquiry about the status in April 2010.  *Id.* ¶¶63a-b, 64a-c.  Plaintiff contends he discovered that the Union withdrew the labor charge on May 6, 2010.  *Id.* ¶¶ 66a.

All of the conduct complained of by plaintiff took place well beyond the six-month statute of limitations.  Accordingly, plaintiff's NLRA claim for breach of the duty of fair representation is time-barred.  The court dismisses this claim with prejudice.

**B.  WLAD claim**

The WLAD prohibits a union from discriminating against any member to whom a duty of representation is owed on the basis of national origin, among others.  RCW 46.60.190(3).  The parties have not cited, and the court is not aware of, any Washington courts that have determined the scope of union liability.  Given that the WLAD is patterned after Title VII, Washington courts have looked to federal law for guidance.  *See*

*Glasgow v. Georgia-Pacific Corp.*, 103 Wash. 2d 401, 406 n.2, 693 P.2d 708 (Wash. 1985) ("Interpretations of Title VII, § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (1982) are not binding on this court, but are instructive and lend support to our decision herein."). The court believes that Washington courts would apply Title VII's framework for a union's scope of liability, and applies it here. *See Woods v. Graphic Commc'ns*, 925 F.2d 1195, 1199 (9th Cir. 1991). Under Title VII, a union may be liable in several ways for workplace discrimination: (1) intentionally failing to file a grievance concerning a racially hostile work environment;[5] (2) acquiescing in a racially discriminatory work environment; and (3) discriminating against a member, including overt acts by union officials. *Id.* at 1200-01. With respect to the second, the "union has an affirmative obligation to oppose employment discrimination against its members. If instead it acquiesced or joined in the Company's discrimination practices, it too is liable to the injured employees." *Id.* at 1200. With respect to the third, if a union assumed responsibility for preventing discrimination in the terms and conditions of employment, the same reasons that prohibit an employer from discriminating on the basis of national origin apply equally to the union. *Id.* at 1201.

Here, plaintiff alleges that the Union knew that Haggen refused to launder Chinese cook's uniforms while laundering the uniform of other individuals in the meat and bakery departments and the uniform of the head-cook. Dkt. # 3 (Am. Compl.) ¶ 29. Plaintiff also alleges that Haggen unfairly mandated the Chinese cooks to do an arduous and excessive amount of heavy lifting. *Id.* ¶¶ 36a. Plaintiff also alleges that the Haggen imposed restrictive disciplinary actions and micromanaged the Chinese cooks. *Id.* ¶ 46a. However, the alleged discriminatory conduct complained of is attributable to Haggen, and plaintiff makes no allegations against the Union that connects any of the Union's acts

---

[5] Plaintiff has not alleged a claim for intentionally failing to file a grievance for hostile work environment.

to alleged discrimination on the basis of national origin.  Additionally, plaintiff's allegations and the evidence submitted by plaintiff demonstrate that the Union raised plaintiff's discrimination and retaliation allegations to Haggen, rather than acquiesce in any discrimination or retaliation practices.  *See id.* ¶ 43; Dkt. # 16-2 at 1-2, 4, 5, 17, 28, (Ex. 74)  (Aug. 28, 2008 Union letter to Haggen address "discriminatory and retaliatory treatment" grievance filed by Wu regarding uniform laundering and arduous task issues), (Ex. 77) (Sept. 16, 2008 Union letter to Haggen regarding unlawful discrimination), (Ex. 78) (Sept. 18, 2008 Union letter to Haggen regarding uniform laundering issue), (Ex. 4065) (Feb. 9, 2009 Union letter to Haggen requesting information relating to discrimination and retaliation claims).[6]  Similarly, there are no allegations in the complaint, or evidence submitted by plaintiff, that the Union's conduct altered the terms and conditions of plaintiff's employment, or otherwise discriminated against him on the basis of national origin.

Accordingly, the court finds that plaintiff has failed to state a claim for violation of the WLAD against the Union.  After a review of the evidence submitted by plaintiff, the court also finds that it would be futile to allow plaintiff to amend his complaint with respect to his WLAD claim, and therefore dismisses this claim with prejudice.

**C.  Section 1981, 1983 & 1985 claims**

Section 1981 prohibits discrimination in making and enforcing contracts by reason of race.  42 U.S.C. § 1981.  "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship[.]"  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006).

Here, plaintiff has not provided any factual allegations of overt acts by the Union, of racial remarks, or of any other conduct attributable to the Union that would suggest

---

[6] These documents are also attached to the complaint. Dkt. # 4-3 at 15, 18, 19 & # 4-31 at 49.

ORDER- 8

racial animus. *See Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989) (overt acts coupled with racial remarks or conduct motivated by racial animus are sufficient to state a claim under section 1985). Accordingly, plaintiff has not plausibly alleged a claim that the Union intentionally discriminated against him on account of his race.

To state a claim under section 1983, a defendant must act under color of state law. 42 U.S.C. § 1983 ("under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia"). Plaintiff appears to concede that he cannot state a claim under section 1983 against the Union. Dkt. # 20 (Opp'n) ¶ 3iii ("Whether or not 42 USC 1983 can apply on Local 367 is beyond my ability to argue for the time being."). The court finds that there are no factual allegations that would suggest that the Union is a state actor, rather than a private entity. Accordingly, plaintiff has not plausibly alleged a section 1983 claim against the Union.

To state a claim under section 1985, plaintiff must allege that (1) defendant engaged in a conspiracy (2) for the purpose of depriving plaintiff of the equal protection of the laws, that (3) one or more of the conspirators took action in furtherance of the conspiracy, and that (4) plaintiff was injured or deprived of a right or privilege of citizenship. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). The second element, intent to deprive the plaintiff of equal protection of the laws, requires allegations of some racial or class-based invidious discrimination. *Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985). A mere allegation of conspiracy without factual specificity is insufficient. *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).

Here, plaintiff has not alleged the factual basis to support his conclusory allegations of conspiracy. Nor has plaintiff alleged that the Union had some racial or class-based animus. Rather, plaintiff's own allegations and exhibits indicate that the Union filed grievances on plaintiff's behalf and specifically highlighted discriminatory conduct by Haggen that needed correction. After a review of the evidence submitted by

plaintiff, the court believes that any amendment would be futile. Accordingly, the court dismisses these claims with prejudice.

## IV. CONCLUSION

For all the foregoing reasons, the court GRANTS defendants' motion to dismiss. Plaintiff's claims are DISMISSED with prejudice. The Clerk is DIRECTED to enter judgment in favor of defendant and against plaintiff.

Dated this 13th day of June, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge